Celeste M. Brecht (SBN 238604)
Caroline D. Murray (SBN 301754)
Ramanda R. Luper (SBN 313606)
JONES DAY
555 South Flower Street
Floor 50
Los Angeles, California 90071.2452
Telephone:  +1.213.489.3939
Facsimile:  +1.213.243.2539
Email: cbrecht@jonesday.com
       carolinemurray@jonesday.com
       rluper@jonesday.com

*Attorneys for Defendant*
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY VICKERS, Individually, and D.H., a minor child by and through a guardian ad litem, Ashley Vickers,<br><br>*Plaintiff,*<br><br>v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, DIGNITY HEALTH d/b/a BAKERSFIELD MEMORIAL HOSPITAL, CHILDREN'S HOSPITAL LOS ANGELES, and DOES 1-10, inclusive,<br><br>*Defendants.* | **NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 BY DEFENDANT ABBOTT LABORATORIES**<br><br>Complaint Filed:  April 6, 2022<br>Action Removed:  June 23, 2022 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Abbott Laboratories ("Abbott") gives notice that the above-captioned action pending in the Superior Court of the State of California, County of Kern, is hereby removed to the United States District Court for the Eastern District of California. This Court has original jurisdiction under 28 U.S.C. §§ 1332 and 1441 *et seq.* In support of this removal, Abbott further states as follows:

1. This is a civil action filed on or about April 6, 2022, and served on May 24, 2022, by Plaintiffs Ashley Vickers and D.H. in the Superior Court of the State of California, Kern County, entitled *Ashley Vickers v. Mead Johnson & Company, LLC, et. al.*, bearing Case Number BCV-22-100810. A true and correct copy of Plaintiffs' Complaint is attached to the Declaration of Celeste M. Brecht ("Brecht Decl.") as Exhibit A.

2. Plaintiffs' filing of this action follows more than 675 other individuals who have filed similar lawsuits across the country in recent months.

3. These cases attack specialized infant formulas and fortifiers that are essential to the survival and development of premature infants in neonatal intensive care units (NICUs). Abbott and Mead Johnson & Company, LLC manufacture and supply these products to NICUs across the country.

4. Premature infants suffer from a host of daunting medical issues relating to their low birthweight and underdevelopment. NICU medical teams use their expertise and medical judgment to select and administer specialized infant formula and fortifier products as part of their course of treatment, when human milk is unavailable or nutritionally insufficient to provide the specialized nutrition and rapid growth that these premature infants desperately need. These products have been the standard of care in NICUs for decades, and they have enabled thousands of extremely premature infants to survive, grow, and thrive. Despite plaintiffs' recent campaign against these products, NICU medical teams—including in the world's best hospitals (like Children's Hospital Los Angeles named here)—continue to administer them as an essential part of the medical toolkit for treating these most fragile of patients.

5. This litigation asserts without merit that these products caused certain infants to develop necrotizing enterocolitis (NEC). NEC, a serious disease of the gastrointestinal tract, is one of the many dangers associated with prematurity and low birthweight. It occurs in up to 8% of premature infants in NICUs, including in infants who receive only human milk or no food at all. No published study has ever concluded that defendants' products cause NEC.

6. Plaintiffs began filing these cases in 2020. By the close of 2021, as a result of plaintiff advertising, cases were pending across the country. Because of the acute need for coordination and the importance of these products to public health, Abbott petitioned the Judicial Panel for Multidistrict Litigation (JPML) to centralize these proceedings and establish a Multi-District Litigation. All parties argued and the JPML agreed that centralized proceedings were necessary, and thus the JPML created *In re Preterm Infant Nutrition Prods. Liab. Litig.*, MDL No. 3026 and assigned it to Chief Judge Rebecca Pallmeyer in the United States District Court for the Northern District of Illinois (the "MDL"). *See In re Preterm Infant Nutrition Prods. Liab. Litig.*, MDL No. 3026, ECF 119 (Apr. 8, 2022). There are nearly 100 federal cases filed throughout the country that either have already been transferred to the MDL or are subject to conditional transfer orders pending before the MDL. Plaintiffs' counsel does not have a leadership role in the MDL.

7. As in those other actions, Plaintiffs here assert product liability claims arising from the administration of Abbott's and/or Mead Johnson's specialized preterm infant formula and/or human milk fortifiers, which Plaintiffs allege caused Plaintiff D.H. to develop NEC. Plaintiffs assert causes of action against Abbott and Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, "Mead Johnson") for (1) Strict Products Liability for Design Defect; (2) Strict Products Liability for Failure to Warn; (3) Negligence; (4) Intentional Misrepresentation; and (5) Negligent Misrepresentation.

8. Unlike most of the lawsuits that preceded this one, however, Plaintiffs also assert a single cause of action against Defendants Dignity Health d/b/a Bakersfield Memorial Hospital and Children's Hospital Los Angeles ("Hospital Defendants"), the hospitals at which Plaintiff

D.H. was allegedly treated and where his physicians selected the preterm formula product at issue.

9. Nearly all of the hundreds of plaintiffs who have filed similar product liability cases relating to specialized infant formula and fortifier products have asserted claims against the manufacturers alone—not any hospitals or medical providers. There is a good reason for that: there is no viable cause of action against them. Indeed, Dignity Health has filed a demurrer in the state court action noting that Plaintiffs' claim against it "must fail" because Dignity Health is not a manufacturer, seller, or distributor of the products at issue; therefore, Plaintiffs have failed to state a cause of action.

10. This case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Abbott has satisfied the procedural requirements for removal and this Court has subject matter pursuant to 28 U.S.C. § 1332. As set forth in detail below, the amount in controversy has been satisfied, and there is complete diversity between Plaintiffs, on the one hand, and Defendants Abbott and Mead Johnson, on the other. Although the complaint also names the Hospital Defendants—which, like Plaintiffs, are citizens of California—those defendants were fraudulently joined.

11. With removal of this action, Abbott will promptly file the requisite "Notice of Potential Tag-Along Action." In addition, Abbott will seek a stay of these proceedings pending transfer to the MDL, so as to further the interest of judicial efficiency and consistency across this nationwide litigation.

I. **ABBOTT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL**

13. Pursuant to 28 U.S.C. § 1446(a), Abbott attaches to this Notice of Removal a true and correct copy of all process, pleadings, and orders filed in the state court action. *See* Brecht Decl., Exs. A-O. Abbott further attaches a true and correct copy of the state court docket. *See id.*, Ex. P.

14. Promptly following the filing of this Notice of Removal, written notice of the removal of this action will be served on all parties' counsel, as required by 28 U.S.C. § 1446(d).

15. A true and correct copy of this Notice of Removal will also be promptly filed with the Superior Court of the State of California, Kern County, pursuant to 28 U.S.C. § 1446(d).

16. Venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because Kern County is located within the United States District Court for the Eastern District of California. *See* 28 U.S.C. § 84(b). Accordingly, the Eastern District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

17. Plaintiffs filed this action on or about April 6, 2022. Abbott's registered agent was served with the Complaint via process server on or about May 24, 2022. Mead Johnson, who was served on or about May 23, 2022, has consented to removal. No consent for removal from the Hospital Defendants is required because, as set forth below, they are not properly joined. *See* 28 U.S.C. § 1446(b)(2)(A) (providing that only those defendants who have been "properly joined and served" must consent).

18. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446 because it is filed within thirty days of formal service upon Abbott, which took place on May 24, 2022.

19. No previous application has been made for the relief requested herein.

## II.  REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A)

20. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action in which the *properly* joined parties are citizens of different states and the amount in controversy exceeds the sum of $75,000 for each Plaintiffs' claims, exclusive of costs and interest.

### A.  The Amount-In-Controversy Requirement Is Satisfied

21. It is evident from the Complaint that the amount in controversy exceeds $75,000, exclusive of interests and costs.

22. Under 28 U.S.C. § 1446(c)(2), "[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks. . . (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded," and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2)(A)-(B); Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, Dec. 7, 2011.  When plaintiffs do not allege a specific amount of damages in the complaint, the defendant must demonstrate the likelihood that plaintiffs' claims each exceed $75,000, exclusive of interest and costs.  *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  A removing defendant need only show that the amount in controversy "more likely than not" exceeds the jurisdictional amount of $75,000.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  When the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal.  *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002); 28 U.S.C. § 1446(c)(2).

23.     Plaintiffs' Complaint does not allege a specific amount in controversy.  Nevertheless, it is evident that the amount in controversy is satisfied.  Plaintiffs seek general and compensatory damages, including medical damages, lost earning capacity, and pain and suffering.[1]  *See, e.g.*, Compl. ¶¶ 1, 11, 15, 73, 74, 82, 90, 100, 110, 124; Prayer for Relief ¶¶ 125-132.  Where, as here, plaintiffs allege serious bodily injury in the context of a product liability action, California federal courts have found that the amount-in-controversy requirement is satisfied.  *See, e.g.*, *Bryant v. Apotex, Inc.*, No. 1:12-CV-01377-LJO-JLT, 2012 WL 5933042, at *4 (E.D. Cal. Nov. 27, 2012) (holding that amount-in-controversy requirement was met in products liability action, although "complaint [did] not set forth a specific amount of damages,"

---

[1] Abbott does not concede that Plaintiffs would be entitled to any of the relief sought in the Complaint.  Further, Abbott notes that Plaintiffs seek "wrongful death damages" but does not allege that D.H. is deceased, nor do Plaintiffs include a cause of action for wrongful death.  *See generally* Brecht Decl., Ex. A.

because plaintiff sought "compensatory damages for injuries and severe pain lasting six months, severe emotional distress, and punitive damages" after allegedly enduring tightening and inflammation of the esophagus); *Campbell v. Bridgestone/Firestone, Inc.*, No. 1:05-CV-01499-FVS-DLB, 2006 WL 707291, at *2-3 (E.D. Cal. Mar. 17, 2006) (holding that amount in controversy exceeded $75,000 and denying motion to remand in products liability case where plaintiff sought compensatory damages, including lost wages and loss of earning capacity, medical expenses, and general damages, after suffering head trauma and broken bones).

24. Given that Plaintiffs' claims for economic and non-economic damages are related to injuries allegedly resulting from the administration of preterm formula products and/or fortifiers, and Plaintiffs allege extensive injury, medical expenses, pain and suffering, and emotional distress, it is evident that the damages sought by Plaintiffs exceeds $75,000. *See, e.g.*, Compl. ¶¶ 1, 11, 15, 73, 74, 82, 90, 100, 110, 124; Prayer for Relief ¶¶ 125-132.

**B.  Complete Diversity of Citizenship Exists Between the Properly Joined Parties**

25. This case is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(1). As explained below, all *properly* joined and served defendants are diverse from Plaintiffs.

**1.  Plaintiffs Are Citizens of California**

26. Upon information and belief, at all times relevant hereto, Plaintiffs were residents and citizens of California. Compl. ¶¶ 3-4.

**2.  Abbott Is A Not A Citizen of California**

27. Abbott is now, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Illinois with its corporate headquarters in Lake County, Illinois. It is therefore a resident of Illinois. Compl. ¶ 6.

**3.  Mead Johnson Is Not A Citizen of California**

28. Mead Johnson Nutritional Company is a wholly owned subsidiary of Reckitt Benckiser PLC and is now, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Indiana. It is thus a resident of those two states. Mead Johnson & Company, LLC is a limited

liability company whose sole member is Mead Johnson Nutritional Company and is therefore also a resident of the States of Delaware and Indiana.  *See* Compl. ¶ 5.

### 4. The Citizenship Of The Doe Defendants Shall Not Be Considered

29.   The citizenship of the Doe Defendants shall not be considered for the purposes of determining diversity jurisdiction, as these are fictional defendants.  *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

### C. The Hospital Defendants Were Fraudulently Joined—And Their Citizenship Must Be Disregarded—Because The Sole Cause of Action Brought Against Them Fails As A Matter Of Law

30.   Dignity Health and Children's Hospital Los Angeles are corporations incorporated under the laws of the State of California.  Compl. ¶¶ 7-8.

31.   While the Hospital Defendants are citizens of California, their presence in this case does not defeat diversity jurisdiction and does not prevent removal, because they were fraudulently joined.  Indeed, for the same reasons stated in this Notice of Removal, Dignity Health filed a demurrer in the state court action noting that Plaintiffs' claim against the Hospital Defendants "must fail" because Dignity Health is not a manufacturer, seller, or distributor of the products at issue; therefore, Plaintiffs have failed to state a cause of action.

32.   For this Court to exercise diversity jurisdiction over the case, all parties must be diverse.  *See* 28 U.S.C. § 1446(b) (providing the procedure for removal based on diversity of citizenship); 28 U.S.C. § 1332(a) (granting federal courts original jurisdiction over all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States).  Plaintiffs have attempted to take advantage of this procedural requirement by naming the Hospital Defendants, who are California corporations, so that "at first blush it must be said that there [is] no diversity."  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

33. As *Ritchey* suggests, however, courts have grown wise to this practice. In *Ritchey*, plaintiff named two non-diverse defendants, a physician and Stanford Health Services, in a product liability suit even though his claims against those providers were barred by the statute of limitations. *Ritchey*, 139 F.3d at 1320. Upjohn Drug Company, the manufacturer of the drug that plaintiff claimed caused his injuries, removed the case despite the presence of the two California defendants. *Id*. at 1315. The district court denied plaintiff's motion to remand. *Id*. The Ninth Circuit affirmed, holding that "fraudulently joined defendants will not defeat removal on diversity grounds." *Id*. The Court further explained that "fraudulent joinder" is a term of art: "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id*. at 1318.

34. The Ninth Circuit also explained that courts must go beyond the pleadings to determine the existence of federal jurisdiction. "Where fraudulent joinder is an issue," "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *Id*.

35. Although "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent," they are similar in that they "[b]oth require some assessment of the plaintiff's lawsuit" and of whether "the complaint states a cause of action." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549–50 (9th Cir. 2018); *see Isaacs v. Broido*, 358 Fed. App'x. 874, 877 (9th Cir. 2009) (holding that "the Rule 12(b)(6) inquiry and the fraudulent joinder inquiry substantially overlap on the issue of failure to state a claim" and that district court could have "dismissed the fraudulently joined defendants on its own motion.").

36. Ninth Circuit courts have repeatedly held that a defendant is fraudulently joined— and its presence in a lawsuit is therefore disregarded for removal purposes—when a plaintiff would be unable to establish the elements of the claims brought against the defendant. *See, e.g.*, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (affirming district court's application of the fraudulent joinder doctrine where plaintiff could not show that sales statement was more than puffery and thus "could not possibly prevail on her negligent misrepresentation

claim" against the non-diverse defendant); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (affirming district court's application of the fraudulent joinder doctrine where the non-diverse defendant was not a signatory to any of the contracts that plaintiff alleged had been breached and so could not be liable); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100-01 (C.D. Cal. 2002) (finding that non-diverse defendants were fraudulently joined after holding that "[t]he factual allegations in the complaint against the resident defendants are wholly inadequate under California law to state a claim."); *see also Great Plans Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (affirming district court's finding of fraudulent joinder and recognizing that a "reasonable" basis to predict that a plaintiff could prevail on his or her claims against the in-state defendants requires more than a "theoretical" basis).

37. Thus, to state a proper claim against the Hospital Defendants, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" and allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions and threadbare recitals of elements, supported by mere conclusion, simply do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Rather, Federal Rule of Civil Procedure 8 "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented." *Id*. at 556. As a consequence, pleadings (such as Plaintiffs' Complaint here) that fail to set forth factual allegations to support asserted legal conclusions against non-diverse defendants should be deemed fraudulent and dismissed. *Id*. at 555; *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

38. Plaintiffs allege only one cause of action, negligent failure to warn, against the Hospital Defendants alone. *See* Compl. ¶¶ 111-124. This claim fails as a matter of law.

39. "[T]o succeed on a claim of negligent failure to warn under California law, a plaintiff must prove that . . . the defendant manufactured, distributed, or sold the product." *Rosa*

*v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009), *aff'd sub nom. Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012); *see also Carlin v. Superior Court*, 13 Cal. 4th 1104, 1112 (1996) ("Negligence law in a failure-to-warn case requires a plaintiff to prove that a *manufacturer or distributor* did not warn of a particular risk for reasons which fell below the acceptable standard of care . . . ." (emphasis added)); Judicial Council of California, Civil Jury Instruction No. 1222, Negligence – Manufacturer or Supplier – Duty to Warn – Essential Factual Elements ("To establish this claim, [Plaintiffs] must prove all of the following: . . . 1. That [Hospital Defendants] manufactured/distributed/sold the [specialized infant formula and fortifier products].").

40. Presumably for that reason, Plaintiffs allege that the Hospital Defendants operated as distributors or suppliers of the specialized infant formula products at issue such that they owed a duty to warn Plaintiffs of risks associated with the products. *See* Compl. ¶ 112 ("The Hospitals, as a purchaser, supplier, and/or distributor of the products at issue in this litigation, owed a duty to the consuming public in general, and Plaintiffs in particular. . . .").

41. But as a matter of California law, hospitals are *not* sellers, suppliers, or distributors of products or other goods used in the course of providing medical services, as Dignity Health argued in its demurrer to Plaintiffs' Complaint (*see* Brecht Decl., Ex. J). Instead, California courts have recognized time and again that the business of a hospital is to provide medical services to patients. *See Silverhart v. Mount Zion Hosp.*, 98 Cal. Rptr. 187, 191 (Cal. App. 1971) (holding hospital not liable for allegedly defective surgical needle because "a hospital furnishing a [product] as part of the medical services it provides is not a seller engaged in the business of selling [products]"); *San Diego Hosp. Ass'n. v. Superior Court*, 35 Cal. Rptr. 2d 489, 493 (Cal. App. 1994) (holding hospital not liable for injuries caused to physician by allegedly defective laser because "[t]he hospital is not in the business of selling or even leasing, bailing or licensing equipment to the physician. It is in the business of providing medical services to its patients. . . . The fact the hospital provides equipment for the physician's use is incidental to the overriding purpose of providing medical services"); *Hector v. Cedars-Sinai Med. Ctr.*, 225 Cal. Rptr. 595, 599 (Cal. App. 1986) (holding hospital not liable for personal injury resulting from defective

pacemaker because it "is not 'engaged in the business of distributing [products] to the public' . . . and does not play 'an integral and vital part in the overall production or marketing' of [products]"); *Shepard v. Alexian Bros. Hosp.*, 109 Cal. Rptr. 132, 135 (Cal. App. 1973) (holding hospital not liable for personal injury where plaintiff contracted hepatitis from blood transfusion because "[t]he patient who enters a hospital goes there not to buy [products], but to obtain a course of treatment").

42. Indeed, California courts have applied this reasoning to every aspect of the care that hospitals provide. *See Pierson v. Sharp Mem'l Hosp., Inc.*, 264 Cal. Rptr. 673, 676 (Cal. App. 1989) (finding that hospital could not even be held liable for allegedly defective carpet in patient's room because "hospitals a[re] providers of professional medical services rather than producers or marketers of products" and "[a] patient's room is part of the specialized facilities enabling the patient to receive 24-hour nursing care and immediate access to other vital medical services.").

43. Nor can Plaintiffs save their claim against the Hospital Defendants by trying to distinguish *negligent* failure to warn from *strict liability* failure to warn. The distinction is irrelevant because California law imposes a duty to warn only on manufacturers, distributors, or sellers of a product, *regardless* of whether the claim is based on negligence or strict liability. *Compare* CACI No. 1222, Negligence – Manufacturer or Supplier – Duty to Warn – Essential Factual Elements, *with* CACI No. 1205, Strict Liability – Failure to Warn – Essential Factual Elements; *see also Gomez Fernandez v. Barr*, 969 F.3d 1077, 1090 (9th Cir. 2020) (recognizing that California's model jury instructions are "persuasive authority" when interpreting California law); *Tucker v. Wright Med. Tech., Inc.*, No. 4:11-CV-03086-YGR, 2013 WL 1149717, at *12-13 (N.D. Cal. Mar. 19, 2013) (stating elements for failure-to-warn claim based on strict liability and negligence and noting that both require a plaintiff to show that "the defendant manufactured, distributed, or sold the product.").

44. Plaintiffs admit—indeed, could not reasonably dispute—that the specialized infant nutrition products at issue here were administered by doctors and medical staff as part of the medical services that the Hospital Defendants provided to Plaintiff D.H. Compl. ¶ 115 (alleging

that the infant received the products at the direction of the Hospital Defendants' healthcare professionals and medical staff through the exercise of their medical judgment and in the course of treating the infants). Accordingly, Plaintiffs cannot show that the Hospital Defendants were distributors or suppliers of premature infant formula or fortifier products; instead, they are providers of medical services.

45. Because the Hospital Defendants cannot be held liable under Plaintiffs' negligent failure to warn theory, Plaintiffs' *only* claim against them fails as a matter of law.

46. Against this backdrop, and because Plaintiffs cannot state a claim against the Hospital Defendants, it is evident that Plaintiffs joined them only in an attempt to destroy diversity. Accordingly, the Court should find that removal under diversity jurisdiction is proper because the Hospital Defendants were fraudulently joined and, therefore, their citizenship must be disregarded.

### III. **CONCLUSION**

53. There is complete diversity amongst the properly joined parties, and this Notice of Removal is appropriate pursuant to 28 U.S.C. § 1441(b).

54. Based on the foregoing, the state court action may be removed to this Court in accordance with the provisions of 28 U.S.C. §§ 1332 and 1441 *et seq.* because this is a civil action pending within the jurisdiction of this Court; this action is between citizens of different states; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

55. No admission of fact, law, or liability is intended by this Notice of Removal, and Abbott expressly reserves all defenses, counterclaims, and motions otherwise available to it.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

WHEREFORE, Abbott removes this action, now pending in the Superior Court of the State of California, Kern County, Case No. BCV-22-100810, to this Court.

Respectfully Submitted,

Dated: June 23, 2022

JONES DAY

By: /s/ Celeste M. Brecht
Celeste M. Brecht
Caroline D. Murray
Ramanda R. Luper

*Attorneys for Defendant*
ABBOTT LABORATORIES